IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MARCUS MOORE,                             )
                                          )
             Petitioner,                  )
                                          )
      v.                                  )         CV 124-097
                                          )
WARDEN GREGORY SAMPSON,                   )
                                          )
             Respondent.                  )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter is currently before the Court on Respondent's motion to dismiss the petition as untimely and/or due to Petitioner's waiver of his right to seek federal habeas review.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 14), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

**I.      BACKGROUND**

In August 2001, a jury in the Superior Court of Richmond County, Georgia, convicted Petitioner of two counts of malice murder, two counts of aggravated assault, and four counts of firearm possession during the commission of certain crimes.  (Doc. no. 1, p. 2; doc. no. 15-8, p. 22; doc. no. 15-9, Moore v. State, 293 Ga. 705, 705, 749 S.E.2d 660, 661 (2013).)  Following the trial, Petitioner entered into a negotiated plea agreement for sentencing because the State had previously given Petitioner notice of its intent to seek the death penalty.  (Doc.

no. 15-8, pp. 25-30); Moore, 293 Ga. at 705.  Pursuant to the plea agreement, Petitioner was sentenced to life without parole for count one, life imprisonment for count three, and additional consecutive sentences for the remaining six counts.  (Doc. no. 15-8, pp. 27-28); Moore, 293 Ga. at 705 & n.2.

Petitioner did not pursue any direct appeal proceedings until 2010, when he filed a motion to correct void sentence.  Moore, 293 Ga. at 706.  Petitioner's motion cited Roper v. Simmons, 543 U.S. 551 (2005), a United States Supreme Court case which held the Eighth Amendment prohibits the imposition of the death penalty for defendants under eighteen years old at the time of their offense.  Moore, 293 Ga. at 705-06.  Relying on Roper, Petitioner argued he was ineligible to receive a life without parole sentence because life without parole was only available in cases where the State could legally seek the death penalty, and as a minor at the time of his offenses, the State thus could not legally seek the death penalty under Roper.  Id. at 706.  The trial court denied Petitioner's motion, but the Georgia Supreme Court reversed, holding Petitioner's life without parole sentence was void.  Id. at 706, 708.  Accordingly, on May 21, 2014, the trial court re-sentenced Petitioner to life with the possibility of parole for count one, life imprisonment for count three, and sixty consecutive years for the remaining counts.  (Doc. no. 15-10, pp. 1-2.)

On October 10, 2014, Petitioner filed a motion for out-of-time appeal, alleging his trial counsel, Mr. David Weber and Mr. Paul David, were ineffective for failing to appeal his 2001 conviction.  (See doc. no. 15-11.)  The trial court denied this motion on November 22, 2018.  (Doc. no. 15-12.)  Petitioner filed a notice of appeal for this denial on November 27, 2018, (doc. no. 15-13), which the trial court dismissed on February 12, 2019, (doc. no. 15-14, p. 3).  On March 4, 2019, Petitioner again filed a notice of appeal, arguing the trial court's dismissal

was improper.  (See doc. no. 15-15.)  On March 13, 2020, the Georgia Supreme Court reversed the trial court's dismissal of Petitioner's notice of appeal, vacated the order denying Petitioner's motion for an out-of-time appeal, and remanded the case to the state court for further proceedings.  Moore v. State, 308 Ga. 312, 312 (2020).  On July 29, 2022, the trial court dismissed Petitioner's motion for an out-of-time appeal, citing to the intervening Georgia Supreme Court decision Cook v. State, 313 Ga. 471 (2022), which "eliminate[d] the out-of-time appeal as a remedy available to litigants who have failed to meet the statutory requirements for the filing of an appeal."  (Doc. no. 15-17.)

On August 22, 2022, Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Baldwin County.  (Doc. no. 1, p. 3; doc. no. 15-1, p. 1.)  The respondent moved to dismiss the state petition because it was untimely, Petitioner waived his ability to bring post-conviction challenges pursuant to his plea agreement, and Petitioner failed to state a claim.  (See doc. no. 15-2.)  Following two evidentiary hearings, the court dismissed Petitioner's state habeas case on all three grounds on June 23, 2023.  (Doc. no. 15-3; see doc. nos. 15-7, 15-8.)  Petitioner applied for a Certificate of Probable Cause ("CPC") on July 5, 2023.  (Doc. no. 15-4.)  On February 20, 2024, the Georgia Supreme Court denied Petitioner's application without comment.  (Doc. no. 15-5.)

Petitioner filed the instant federal habeas corpus petition on June 6, 2024.  (See doc. no. 1.)  He raised three grounds for relief:  (1) his conviction was obtained by an unlawfully induced or involuntary guilty plea, (2) ineffective assistance of trial counsel, and (3) denial of his right to appeal.  (Id. at 5.)  Regarding ground two, Petitioner specifically alleges trial counsel was ineffective because they "allow[ed] [the] sentencing judge to find aggravating circumstance[s] necessary for imposition of death penalty," gave advice about Petitioner's

sentence that affected his decision to take the guilty plea, provided erroneous advice about Petitioner's parole eligibility, and negotiated an "invalid plea agreement." (Id.)  On July 11 and July 24, 2024, Petitioner filed additional briefs in support of his federal habeas claims. (Doc. nos. 10, 11.)   Petitioner also filed two appendices containing copies of various documents relevant to Petitioner's case.  (Doc. nos. 12, 18.)

Respondent moves to dismiss the federal petition on the basis that it is time-barred under 28 U.S.C. § 2244(d), and/or Petitioner waived the right to seek federal habeas relief for several grounds.  (See doc. no. 14.)  Petitioner opposes the motion, arguing his petition is timely because "the limitations period begins to run from the date the only state-court [sic] remedy available (out of time appeal) became final" on May 13, 2022.  (Doc. no. 16, p. 2.)[1] He further asserts he did not knowingly, voluntarily, and intelligently waive his right to appellate review because his original sentence was ruled void.  (Doc. no. 16, p. 3.)  Thereafter, Petitioner supplemented his response, presenting similar arguments regarding the errors surrounding his guilty plea.  (Doc. nos. 19, 20, 21.)

## II.    DISCUSSION

### A.    The Petition Should Be Dismissed as Time-Barred

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

(1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[1] Petitioner filed two responses raising identical arguments to Respondent's motion to dismiss, though one response is addressed to the undersigned, (doc. no. 16), and the other is addressed to the Clerk of Court, (doc. no. 17).  For ease of reference, the Court only cites to Petitioner's response addressed to the undersigned.  (Doc. no. 16.)

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review."  See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) (explaining judgment for petitioners who do not seek certiorari from United States Supreme Court "becomes final at the 'expiration of the time for seeking such review' - when the time for pursuing direct review in this Court, or in state court, expires."); Stubbs v. Hall, 840 S.E.2d 407, 412 (Ga. 2020) (interpreting Georgia habeas corpus law in accordance with Gonzalez, supra, to conclude judgment of conviction is final when Supreme Court affirms conviction on merits or denies certiorari, "or when the time for pursuing the next step in the direct appellate review process expires without that step having been taken").

Here, Petitioner did not directly appeal his conviction.  Moore, 293 Ga. at 705-06. Rather, four years after his original sentencing, he filed a motion to correct void sentence following the Roper decision.  Id.  In accordance with Roper's holding, Petitioner was re-sentenced on May 21, 2014.  Moore, 293 Ga. 705; (doc. no. 15-10, p. 2.) Pursuant to O.C.G.A. § 5-6-38(a), which provides thirty days to file a notice of appeal "after entry of the appealable

decision or judgment complained of," Petitioner had until June 20, 2014, to appeal his re-sentencing.  However, Petitioner failed to timely file an appeal of his amended sentence.  Thus, Petitioner's conviction became "final" when the thirty-day period to appeal expired on June 20, 2014.

Petitioner then had one year from the date his re-sentencing became final to file his federal habeas corpus petition.  Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1293 (11th Cir. 2007) (holding "AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and the sentence the petitioner is serving, is final" in a case deciding whether a re-sentenced petitioner's habeas corpus petition was timely filed).  Additionally, pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction relief or other collateral review is pending in state court.  Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006).

Here, based on the date his amended sentence became final, Petitioner had until June 22, 2015,[2] to file his federal habeas corpus petition.  On October 10, 2014, approximately 112 days after the AEDPA limitations period began, Petitioner filed a motion for out-of-time appeal.  (See doc. no. 15-11.)  Petitioner litigated his motion until July 29, 2022, when the trial court dismissed the motion on remand based on the Georgia Supreme Court's decision in Cook.  (See doc. no. 15-17.)  Because Petitioner did not file any request for post-conviction relief until August 22, 2022, the date on which he filed his state habeas petition, (see doc. no.

---

[2] Because June 20, 2015, which is exactly one year after Petitioner's re-sentencing became final, fell on a Saturday, Petitioner had until the following Monday, June 22, 2015, to file his federal habeas corpus petition.

15-1), Petitioner's instant § 2254 petition is untimely unless the motion for out-of-time appeal tolled the AEDPA limitations period.  It did not.

Respondent argues Petitioner's § 2254 petition is untimely because he filed his state habeas petition over eight years after his convictions became final, and Petitioner's motion for out-of-time appeal "has no bearing on the timeliness of the federal petition."  (Doc. no. 14, p. 13.)  Respondent presents no argument specific to whether the motion for out-of-time appeal tolled AEDPA's limitations period.  (See doc. no. 14.)  Rather, Respondent recites the lengthy procedural history of Petitioner's motion for out-of-time appeal, which ultimately ended in dismissal due to the Georgia Supreme Court holding in Cook that eliminated out-of-time appeals as a recognized remedy by Georgia trial courts.  (Id. at 13-15.)  In light of this holding, Respondent points to Chamblee v. Florida, a case where the Eleventh Circuit stated, "in habeas proceedings, we are bound by a state court's interpretation of its own laws and procedures."  (Id. at 16 (citing Chamblee v. Florida, 905 F.3d 1192, 1196 (11th Cir. 2018).)   Thus, Respondent argues because the trial court never granted Petitioner's motion for out-of-time appeal, and instead dismissed it based on Cook, Petitioner's motion for out-of-time appeal does not restart the one-year limitations period under AEDPA.  (Id.)

In response to Respondent's untimeliness argument, Petitioner argues, without citing any case law or other authority, his § 2254 petition is timely because the limitations period runs from the date the out-of-time appeal, which he asserts was "the only state-court remedy available," became final.  (Doc. no. 16, p. 2.)  He then cites the date May 13, 2022, as the date on which the out-of-time appeal became final.  (Id.)  For the reasons described above, this argument is incorrect because the limitations period runs from the date Petitioner's amended sentence became final, not the date the out-of-time appeal became final.  Ferreira, 494 F.3d at

1293.  Petitioner further notes in a supplemental response that he filed a motion for out-of-time appeal on October 10, 2014, and "shortly[] after" he filed his state habeas petition on August 22, 2022, but he makes no argument regarding the out-of-time appeal motion's impact on AEDPA tolling.  (Doc. no. 21, p. 1.)

Notwithstanding Respondent's argument, the Court finds the instant § 2254 petition untimely for a more fundamental reason:  Petitioner's motion for out-of-time appeal does not constitute an "application for . . . other collateral review" under § 2244(d)(2), and accordingly, does not activate AEDPA's tolling provisions.  The United States Supreme Court in Kholi defined "collateral review" under § 2244(d)(2) as "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process."  Wall v. Kholi, 562 U.S. 545, 553 (2011).  Regarding the word "review," the Supreme Court relied on a First Circuit case finding "that 'review' commonly denotes 'a looking over or examination with a view to amendment or improvement.'"  Id. (citation omitted).

In two cases involving Florida law, the Eleventh Circuit applied Kholi's definition of "collateral review" under § 2244(d)(2) to untimely appeals filed during the pendency of AEDPA's one-year limitations period, concluding neither of the "belated" appeals at issue tolled AEDPA's clock.  See Espinosa v. Sec'y, Dep't of Corr., 804 F.3d 1137 (11th Cir. 2015); Danny v. Sec'y, Fla. Dep't of Corr., 811 F.3d 1301 (11th Cir. 2016).  In Espinosa, the Eleventh Circuit held a belated appeal of a previously dismissed state post-conviction relief petition did not toll the limitations period.  804 F.3d at 1141.  The Eleventh Circuit noted that under the applicable Florida law, "[a]n appellate court decides that a petitioner is entitled to belated appeal by considering whether his lawyer failed to file a timely appeal upon request, his lawyer misadvised him as to the availability of review, or there were 'circumstances unrelated to [his]

8

counsel[ ] . . . that were beyond the petitioner's control and otherwise interfered with the petitioner's ability to file a timely appeal.'" Id. (citation omitted). The Eleventh Circuit also reasoned the "petition for belated appeal 'does not challenge directly any specific ruling' in the criminal case" nor requires a petitioner to allege "potentially meritorious" issues on appeal. Id. (citations omitted). The Eleventh Circuit distinguished these facts from a Seventh Circuit case deciding a belated appeal tolled the AEDPA clock in which "the state court 'excused the untimeliness as a matter of state law and ruled on the merits.'" Id. at 1142 (citing Fernandez v. Sternes, 277 F.3d 977, 981 (7th Cir. 2000)).

Likewise, in Danny, the Eleventh Circuit held a petition for a belated direct appeal did not toll the AEDPA limitations period. 811 F.3d at 1303-04. Applying Kholi and Espinosa, the Eleventh Circuit reasoned the belated direct appeal petition at issue "only revives a petitioner's right to prosecute a direct appeal" and thereby did not involve any "judicial reexamination of a judgment or claim" to constitute collateral review under AEDPA. Id. at 1304 (citation omitted). The Eleventh Circuit also observed a state court order "granting a petition for belated appeal . . . [] is treated as the notice of appeal." Id. (internal quotations and citation omitted).

Here, a motion for out-of-time appeal under Georgia law is like the petitions for belated post-conviction review and belated direct appeal examined by the Eleventh Circuit in Espinosa and Danny because it similarly does not involve "the judicial reexamination of a judgment," Espinosa, 804 F.3d at 1140; Danny, 811 F.3d at 1304, "with a view to amendment or improvement of the judgment or claim," Espinosa, 804 F.3d at 1141; Danny, 811 F.3d at 1305 (citations omitted). Although the Georgia Supreme Court declared motions for out-of-time appeal a nullity in 2022, Cook, 313 Ga. at 506, Petitioner filed his motion prior to this decision,

(see doc. no. 15-11).  When recognized as a remedy in Georgia, a granted out-of-time appeal provided the defendant with "permission to pursue appropriate post-conviction remedies". Ponder v. State, 260 Ga. 840, 841 (1991); see also Dawson v. State, 302 Ga. App. 842, 843 (2010) ("[T]he grant of an out-of-time appeal 'should be seen as permission to pursue the post-conviction remedies which would be available at the same time as a direct appeal . . . .'" (citation omitted)).  Accordingly, a pre-Cook granted out-of-time appeal is like the belated direct appeal in Danny, as it simply "revive[d]" the right to pursue a direct appeal.  811 F.3d at 1304.

Moreover, like the belated appeal discussed in Espinosa, which requires the reviewing court to analyze the reasons underlying counsel's failure to timely appeal, 804 F.3d at 1141, Georgia trial courts ruling on motions for out-of-time appeals had to engage in a similar analysis.  To obtain an out-of-time appeal, a defendant had to establish "his counsel was ineffective in not filing a timely appeal." Stephens v. State, 291 Ga. 837, 838 (2012); see also Jones v. State, 308 Ga. 337, 337 (2020) ("A defendant seeking an out-of-time appeal 'must allege and prove an excuse of constitutional magnitude for failing to file a timely direct appeal,' usually by showing that counsel's ineffectiveness deprived the defendant of the right to an appeal.").  A defendant made this showing under Strickland by establishing the "appeal of right was lost as a consequence of [] counsel's deficient performance" and prejudice, or "a reasonable probability that, but for counsel's deficient performance, '[the defendant] would have timely appealed.'" Collier v. State, 307 Ga. 363, 773-74 (2019); see also Strickland v. Washington, 466 U.S. 668 (1984).  Indeed, Petitioner made this argument in his motion for out-of-time appeal.  (See, e.g., doc. no. 15-11, p. 3 (arguing trial counsel "made absolutely no attempt or legal effort to appeal [Petitioner's] instant conviction, despite the fact that counsel

clearly informed [Petitioner] such an appeal would be timely made and effectively pursued in Defendant's behalf").)

Finally, "a defendant need not show that she actually would have prevailed in a timely appeal" to obtain an out-of-time appeal in Georgia.  Jones, 308 Ga. at 338; see also Collier, 307 Ga. at 368-69 ("Because prejudice is presumed, a criminal defendant cannot be required to identify the meritorious issue he would have raised (on the existing record or otherwise) in a hypothetical appeal in order to establish that his counsel's deficient performance prejudiced him.").  This is similar to the belated appeal in Espinosa, which does not require the petitioner to establish the issues on appeal are "potentially meritorious."  804 F.3d at 1104 (internal quotations and citation omitted).  Accordingly, given the significant similarities between a motion for out-of-time appeal and the belated appeals analyzed in Espinosa and Danny, the Court finds a motion for out-of-time appeal does not constitute "other collateral review" under § 2244(d)(2).  Thus, it cannot toll AEDPA's one-year statute of limitations.

Indeed, federal courts in Georgia have reached this same conclusion.  Relying on Espinosa and Danny, United States District Court Judge Marc T. Treadwell concluded a motion for out-of-time appeal under Georgia law did not qualify for AEDPA tolling because it neither "request[s] judicial review of a judgment" nor gives "a state court [] authority to order relief from a judgment."  Thurman v. McLaughlin, No. 5:14-cv-233, 2016 WL 4546373, at *1 (M.D. Ga. Aug. 31, 2016) (quoting Danny, 811 F.3d at 1304).  Other district courts agree. See Ray v. Comm'r, Ga. Dep't of Corr., No. 5:20-CV-429, 2021 WL 12253766, at *3 (M.D. Ga. Aug. 2, 2021) (applying Danny and Thurman to conclude petitioner's out-of-time appeal did not toll the limitations period), adopted by 2021 WL 12253765 (S.D. Ga. Nov. 5, 2021); Pettigrew v. Oliver, CV 423-347, 2024 WL 2178528, at *2 (S.D. Ga. Apr. 4, 2024) (explaining

"[petitioner's] [m]otion seeking an out-of-time appeal does not affect the limitations period"),
*adopted by* 2024 WL 2176415, (S.D. Ga. May 13, 2024).

In sum, when recognized in Georgia, a motion for out-of-time appeal did not seek
"judicial reexamination of a judgment" because it merely opened the door for filing a late
appeal. Kholi, 562 U.S. at 553; Ponder, 260 Ga. at 840. Thus, it does not constitute collateral
review, thereby foreclosing its ability to toll AEDPA's one-year statute of limitations.

As Petitioner's motion for out-of-time appeal does not toll AEDPA's limitations period,
and Petitioner did not properly file any other "applications for State post-conviction or other
collateral review" during the one-year window to otherwise toll the AEDPA clock, the instant
petition is untimely. Petitioner did not file his state habeas petition until August 22, 2022,
which is several years after June 22, 2015, the date by which Petitioner had to file a federal
habeas petition absent tolling. Because Petitioner filed his federal petition years after the
expiration of the one-year statute of limitations, his current federal challenge is time-barred
and should be dismissed.

**B.    The Limitations Period Was Not Otherwise Reset Under AEDPA, and Petitioner Has Not Shown that He Is Entitled to Equitable Tolling or that a Fundamental Miscarriage of Justice Has Occurred**

Petitioner has not provided any explanation that would delay or reset his one-year
statute of limitations under any statutory sections of AEDPA set forth above. See 28 U.S.C. §
2244(d)(1)(B)-(D). Nevertheless, an otherwise untimely § 2254 petition may be considered if
a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental
miscarriage of justice has occurred.

**1.    Equitable Tolling Is Not Warranted**

Equitable tolling can be applied to prevent application of AEDPA's statutory deadline,

but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). However, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003), aff'd 544 U.S. 295 (2005). The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1072 (11th Cir. 2011). Vague or conclusory allegations are insufficient to satisfy Petitioner's burden to show how he acted with diligence. Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209-10 (11th Cir. 2014). As to establishing an extraordinary circumstance, Petitioner must show a causal connection between the alleged circumstance and the late filing, San Martin, 633 F.3d at 1267, and the extraordinary circumstance must be "unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam).

Here, Petitioner has not shown extraordinary circumstances stood in his way and that he has been pursuing his rights diligently. To the contrary, beyond his conclusory assertion the limitations period begins to run from the date of "the only state-court remedy available (out-of-time appeal) became final," (doc. no. 16, p. 2), Petitioner offers no argument on timeliness. However, as explained above, AEDPA's statute of limitations began to run after Petitioner's re-sentencing became final, and the limitations period expired *before* Petitioner

commenced his state habeas proceeding despite the motion for out-of-time appeal filed during the tolling period.

Although Petitioner's assertion suggests he believes the out-of-time appeal was the *only* available state court remedy, neither his misunderstanding about the post-conviction remedies available to him nor his mistaken belief about the AEDPA limitations period are sufficient to establish extraordinary circumstances. Indeed, the Eleventh Circuit does not accept "a lack of legal education and related confusion or ignorance about the law as [an] excuse[] for a failure to file in a timely fashion. As with any litigant, *pro se* litigants 'are deemed to know of the one-year statute of limitations.'" Perez v. Florida, 519 F. App'x 995, 997 (11th Cir. 2013) (*per curiam*) (internal citations omitted); see also Jones v. United States, 304 F.3d 1035, 1044 (11th Cir. 2002) (rejecting ignorance of law, inefficiencies, or inconveniences as qualifying as extraordinary circumstances). Eleventh Circuit precedent is clear a petitioner in federal court seeking to invoke equitable tolling must explain "any independent efforts he made to determine when the relevant limitations period began to run." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (citation omitted), *opinion modified on rehr'g on other grounds*, 459 F.3d 1310 (11th Cir. 2006); Howell v. Crosby, 415 F.3d 1250, 1252 (11th Cir. 2005) (finding no basis for equitable tolling "especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline").

Petitioner does not argue, let alone provide any factual detail to support a finding, he made any efforts to determine when his federal statute of limitations began to run. In sum, Petitioner has not satisfied the "strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (*per curiam*).

### 2.  The Fundamental Miscarriage of Justice Exception Does Not Apply

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394-95.

Petitioner has not shown that a miscarriage of justice will occur if his claims are not considered.  Petitioner fails to present any evidence, much less new and reliable evidence, to show he did not commit the offenses of which he was convicted such that no reasonable juror would have found him guilty beyond a reasonable doubt.  Indeed, he never claims in his petition that he did not commit the offenses of which he was convicted.  Rather, his stated grounds for relief detail errors regarding his guilty plea, trial counsel ineffectiveness, and the denial of his right to appeal.  (Doc. no. 1, p. 5.)

In sum, Petitioner has presented no evidence to support, let alone satisfy, the high

burden that no reasonable fact finder could have found him guilty of the offenses for which he was convicted.  See Ray v. Mitchem, 272 F. App'x 807, 810-11 (11th Cir. 2008) (*per curiam*) (emphasizing "actual innocence means factual innocence, not mere legal insufficiency") (citing Bousley v. United States, 523 U.S. 614, 623 (1998)).  Thus, the fundamental miscarriage of justice exception does not save the untimely petition from dismissal.

Because the instant petition should be dismissed as untimely, the Court declines to analyze Respondent's alternate argument that the petition should be dismissed on the basis that Petitioner waived his right to seek federal habeas review.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 14), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 26th day of November, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

16